INTERMED, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Intermed, Inc. v. Commissioner
Docket No. 6913-74.
United States Tax Court
T.C. Memo 1977-306; 1977 Tax Ct. Memo LEXIS 134; 36 T.C.M. (CCH) 1209; T.C.M. (RIA) 770306; September 12, 1977, Filed *134 Porter Rodgers Hospital, Inc. (PRH, Inc.), one of petitioner's subsidiaries, purchased the assets of a sole proprietorship. As part of the purchase price PRH, Inc., assumed debts owed to Medicare. On February 25, 1970, those debts were offset by amounts Medicare owed PRH, Inc. Held, PRH, Inc., received income as a result of the offset. This income should have been reported on petitioner's 1970 consolidated Federal income tax return. Held further, petitioner is not entitled to a corresponding deduction under sec. 162, I.R.C. 1954. J. Richard Johnston,William E. Bishop,C. J. Giroir, and Robert C. Banks, Jr., for the petitioner. Osmun R. Latrobe, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $13,365.38 in petitioner's consolidated Federal income tax return for the taxable year ending December 31, 1970. There are two issues for our resolution. We must decide whether petitioner's subsidiary, Porter Rodgers Hospital, Inc., whose income was reported on petitioner's 1970 consolidated Federal income tax return, recognized income when debts owed by the subsidiary to Medicare were reduced or offset by amounts *136 Medicare owed the subsidiary. If we conclude the subsidiary recognized income as a result of the offset, we must decide whether petitioner is entitled to a corresponding deduction under section 162. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, an Arkansas corporation, had its principal place of business in Little Rock, Arkansas, when it filed its consolidated Federal income tax return for 1970 and when it filed its petition herein. Petitioner, which reported its income using the cash method of accounting, filed its 1970 consolidated Federal income tax return as the parent corporation of a group of subsidiaries that included Porter Rodgers Hospital, Inc. During 1970, the year in question, petitioner operated nursing homes, hospitals, and a surgical supply company. Petitioner's subsidiary, Porter Rodgers Hospital, Inc. (hereinafter PRH, Inc.), provided medical and health related services to individuals. PRH, Inc., performed a substantial part of its services under the Medicare program. Porter *137 Rodgers Hospital was initially organized and operated as a sole proprietorship by Dr. Porter Rodgers, Sr. The proprietorship employed the cash method of accounting. In July 1967, Dr. Porter Rodgers, Sr., sold his sole proprietorship to the newly formed corporation, PRH, Inc., and he and his family in exchange, received PRH, Inc., stock. The bill of sale transferring ownership of the sole proprietorship to PRH, Inc., lists the assets and liabilities transferred to the newly formed corporation. No liabilities representing amounts owed to Arkansas Blue Cross or Medicare are on this list. The bill of sale states that Dr. Porter Rodgers, Sr., warrants "the title to said property against all lawful claims, except those set forth above." On January 31, 1969, petitioner acquired 100 percent of PRH, Inc.'s outstanding stock in a tax-free reorganization under section 368(a)(1)(B), with PRH, Inc's stockholders receiving petitioner's stock in exchange for their PRH, Inc., stock. During 1966 through 1971, Porter Rodgers Hospital, while operated by the sole proprietorship and later by the corporation, received funds from Arkansas Blue Cross (hereinafter Blue Cross). Blue Cross, acting as *138 an intermediary for Medicare, made payments to the hospital, a Medicare provider, based on claims and reports filed by the hospital and audited by Blue Cross. The hospital filed claims and received reimbursements from Blue Cross and ultimately from Medicare in the following manner. Biweekly, the hospital filed estimates of the amounts due the hospital from Medicare. These estimated claims were paid on a monthly basis by Blue Cross as an intermediary or representative for Medicare.Annually, the hospital filed a report with Blue Cross in which the hospital itemized actual, rather than estimated, expenditures made during the year. These annual reports were scanned by Blue Cross for obvious errors, and if none existed, Blue Cross made a tentative settlement with the hospital.The amount of the tentative settlement was immediately paid in full by Blue Cross if amounts were due the hospital. Otherwise, if amounts were due Medicare because Blue Cross had overpaid the hospital during the year, Blue Cross would make a demand for payment from the hospital within 90 days. The amount determined in the annual, tentative settlement was subject to final audit by Blue Cross. Upon completion *139 of final audit, a final settlement was made by Blue Cross and all accounts were settled for the year in question. After Blue Cross completed its final audit, the Social Security Administration reviewed the entire accounting. During 1966 and 1967, while the hospital was operated as a sole proprietorship, Blue Cross made overpayments to the hospital. As a result, on March 15, 1968, and March 31, 1968, the hospital paid Blue Cross the amount due in tentative settlement of the overpayments received during 1966. On February 25, 1970, Blue Cross notified petitioner's president that it had made a final audit of the hospital [2] for 1966 and the hospital owed Medicare $28,515. In the same letter, Blue Cross notified petitioner's president that a tentative settlement for 1967 with the hospital indicated that it owed Medicare $29,648. Tentative settlements for the years 1968 and 1969, however, indicated that Medicare owed the hospital $14,142 and $13,023, respectively. Totaling the amount owed Medicare as a result of the overpayments in 1966 and 1967, and subtracting or offsetting from this amount the underpayments made by Medicare in 1968 and 1969, Blue Cross informed petitioner's president *140 that the hospital owed Medicare $30,998, payable within 90 days. Consistent with this letter, official Blue Cross records indicate that on February 25, 1970, the Porter Rodgers Hospital account was granted a credit of $14,142 for 1968 and $13,023 for 1969. This credit was used as an offset against a final settlement owed by the hospital for the year 1966.
On July 29, 1971, Richard Dickinson, the Administrator of Porter Rodgers Hospital, received a letter from Blue Cross stating that Blue Cross had arrived at a final settlement for 1966 through 1969. This final settlement indicated that the hospital owed Blue Cross $46,148. Attached to the July 29, 1971, letter was a computation sheet noting that on February 25, 1970, the hospital had the sum of $27,165 offset against *141 a final settlement of amounts due Blue Cross for 1966. This figure represents the sum of tentative credits given the hospital of $14,142 for 1968 and $13,023 for 1969. Also in the July 29, 1971, letter Dickinson was notified that the $46,148 owed by the hospital for the period 1966 through 1969 would be deducted from the tentative 1970 settlement, should that settlement indicate amounts were due the hospital from Blue Cross. On August 6, 1971, Blue Cross notified Dickinson of the tentative 1970 settlement. In this letter Dickinson was requested to furnish Blue Cross with any objections to the tentative settlement by September 5, 1971. He was further advised that if Blue Cross had not received any objections by that date, Blue Cross would assume that Dickinson agreed with the tentative 1970 settlement. Subsequently, on August 12, 1971, Dickinson received a check for $28,216 from Blue Cross. This check represented the tentative 1970 settlement of amounts due the hospital less amounts due Blue Cross for 1966 through 1969. No protest to the tentative 1970 settlement was made prior to September 5, 1971, as requested by Blue Cross. In the fall of 1972, however, after the Internal *142 Revenue Service indicated that PRH, Inc., may have received taxable income as a result of the offset credited the hospital on February 25, 1970, PRH, Inc., protested the offset to Blue Cross. On October 25, 1972, petitioner's counsel C. Joseph Giroir, Jr., wrote to Blue Cross, stating: As you know, Porter Rodgers Hospital, Inc. was operated as a sole proprietorship of Dr. Porter Rodgers, Sr. during the six months ended December 31, 1966 and six months ended June 30, 1967. Subsequently the hospital was incorporated and all of the outstanding stock was acquired by Intermed International, Inc. Due to the change in ownership it is our belief that the offset is inappropriate and that Porter Rodgers Hospital, Inc. is entitled to full payment for the amounts reflected as an offset. On October 27, 1972, Blue Cross acknowledged Giroir's letter and began reviewing the Porter Rodgers Hospital account. Subsequently, on January 31, 1973, Ronald A. May, an attorney for Blue Cross, who was with the firm Wright, Lindsey & Jennings, wrote to Giroir affirming Blue Cross's finding, stating: Since our last meeting, we have been in further communication with members of the Porter Rodgers family. *143 They continue to insist that assrts were transferred to and liabilities were assumed by Porter Rodgers Hospital, Inc., and, ultimately, Intermed International, Inc. This comports with the earlier investigation made by Arkansas Blue Cross and Blue Shield, Inc., as Intermediary under the Medicare program. Accordingly, the decision to offset overpayments must stand. Subsequently, in a letter dated April 30, 1973, to the Internal Revenue Service conferee, which included protests to several of the agent's findings, Girior discussed petitioner's position with respect to the offset and agreed that the offset was correct: The agent questioned the legality of the offset. Intermed examined its records, discussed the matter with Blue Cross Blue Shield, and both Intermed and Blue Cross Blue Shield have concluded that the offset was proper and therefore the maximum amount payable by Blue Cross Blue Shield to Intermed during the period was the amount reflected on the tax return. I am attaching hereto a copy of a letter from Wright Lindsey & Jennings, attorneys for Blue Cross Blue Shield, in which the conclusion is stated that the offset was proper. The Board of Directors of Intermed has, *144 based upon company records, concurred in that conclusion. Since Blue Cross notified petitioner that its initial decision to offset overpayments was correct, petitioner has made no further effort to protest Blue Cross's findings. OPINION We must determine whether PRH, Inc., received income in 1970 when amounts owed by its predecessor to Medicare were decreased or offset by amounts Medicare owed PRH, Inc. If so, we must determine whether PRH, Inc., is entitled to a corresponding deduction under section 162. [3]
In 1966 Porter Rodgers Hospital, the sole proprietorship, had debts owing Blue Cross. Petitioner contends that the sole proprietorship's debts were never assumed by PRH, Inc.Consequently, on February 25, 1970, when Blue Cross offset the sole proprietorship's 1966 debts by $27,165, the amount Blue Cross owed PRH, Inc., for 1968 and 1969, PRH, Inc., received *145 nothing of value. Therefore, petitioner contends PRH, Inc., is not required to include the offset in its 1970 income. In contrast, respondent contends PRH, Inc., assumed the sole proprietorship's debts owed to Blue Cross, those debts were offset in 1970 by amounts owed PRH, Inc., and therefore PRH, Inc., was in constructive receipt of $27,165 of income for 1970. The key to petitioner's case is to determine whether PRH, Inc., assumed the sole proprietorship's 1966 debts to Blue Cross. If so, Blue Cross's action of offsetting or reducing the 1966 debts by amounts Blue Cross owed PRH, Inc., constituted the constructive receipt of income by PRH, Inc. [4]
As evidence that PRH, Inc. *146 , did not assume the sole proprietorship's 1966 debts to Blue Cross, petitioner relies upon the bill of sale and the warranty contained therein that transferred the sole proprietorship to PRH, Inc. That bill of sale mentions specific liabilities, but makes no reference to the Blue Cross liabilities. It concludes that Dr. Porter Rodgers, Sr., warrants "the title to said property against all lawful claims, except those set forth above." Although not listed in the bill of sale, the record clearly shows that PRH, Inc., did in fact assume the sole proprietorship's Blue Cross liabilities. The first indication that PRH, Inc., intended to assume the sole proprietorship's 1966 Blue Cross liabilities occurred in 1968 when, on March 15, and March 31, PRH, Inc., made cash payments to Blue Cross in tentative settlement of the sole proprietorship's 1966 Blue Cross account. The only explanation for this payment is that PRH, Inc., intended to assume the sole proprietorship's Blue Cross liabilities. Next, on February 25, 1970, Blue Cross notified petitioner's president that a final audit for 1966 indicated $28,515 was due Blue Cross. It was on this date that the setoff from amounts due PRH, *147 Inc., for 1968 and 1969 occurred. Although petitioner's president could have lodged a protest with Blue Cross at this time, objecting to the setoff and specifically stating that PRH, Inc., had not assumed the sole proprietorship's debts, he did not do so. On July 29, 1971, Porter Rodgers Hospital was contacted by Blue Cross. On that date, Blue Cross notified the hospital that a final audit for 1966 through 1969 indicated that the hospital owed Blue Cross $46,148. This amount due Blue Cross was offset by amounts Blue Cross tentatively owed the hospital for 1970. On August 6, 1971, the hospital was requested to raise any objections to the audit by September 5, 1971. The hospital raised no such objections prior to the requested deadline. On August 12, 1971, the hospital received a check representing a final settlement for the years 1966 through 1969, and a tentative settlement for 1970. Again, no objections were raised. This pattern of being repeatedly notified of a liability for 1966 without raising any objections speaks for itself: PRH, Inc., intended to assume the sole proprietorship's 1966 indebtedness to Blue Cross. In the fall of 1972, PRH, Inc., finally objected *148 to Blue Cross's accounting covering 1966. At this time, petitioner's counsel wrote to Blue Cross and suggested that due to the change in ownership, the February 25, 1970, offset was improper. Blue Cross's attorney, however, disagreed with petitioner's counsel and noted that the decision to offset payments must stand. Subsequently, in a letter to the Internal Revenue Service conferee, petitioner's counsel stated: The agent questioned the legality of the offset. Intermed examined its records, discussed the matter with Blue Cross Blue Shield, and both Intermed and Blue Cross Blue Shield have concluded that the offset was proper and therefore the maximum amount payable by Blue Cross Blue Shield to Intermed during the period was the amount reflected on the tax return. I am attaching hereto a copy of a letter from Wright, Lindsey & Jennings, attorneys for Blue Cross Blue Shield, in which the conclusion is stated that the offset was proper. The Board of Directors of Intermed has, based upon company records, concurred in that conclusion. [Emphasis added.] This document clearly states that Blue Cross, petitioner's board of directors, and Blue Cross's attorneys all agreed *149 that the offset was proper. At trial, petitioner's counsel contended that the above-quoted paragraph contained at least three typographical errors, specifically noting that the phrase "was proper" which appears twice in the above paragraph, was intended to read "was not proper." A third typographical error supposedly occurred in the final sentence which should have read that the "board of directors of Intermed has not, based upon company records, concurred in that conclusion." We find this explanation totally without merit, especially in light of the attached letter, referred to in the abovequoted paragraph, which stated "the decision to offset overpayments must stand." Although petitioner's protest letter to the Internal Revenue Service conferee represents some confused thinking on what constitutes taxable income, the above-quoted paragraph clearly indicates that petitioner considered Blue Cross's accounting--the offset--proper. In sum, we conclude that PRH, Inc., assumed the sole proprietorship's liabilities to Blue Cross, and as such constructively received income when Blue Cross, on February 25, 1970, offset the amount PRH, Inc., owed for 1966 by amounts Blue Cross owed PRH, *150 Inc., for 1968 and 1969. Petitioner's second argument that it is entitled to a corresponding section 162 deduction is without merit. Petitioner contends that if we conclude PRH, Inc., assumed the sole proprietorship's 1966 liabilities to Blue Cross, it did not do so until 1971 and the motive for assuming the liabilities was so that it could continue to do business with Blue Cross. We find petitioner's argument totally contrary to the facts. PRH, Inc., was incorporated in 1967 at which time it acquired the assets of Porter Rodgers Hospital, a sole proprietorship. In 1968, on two occasions, cash payments were made in partial satisfaction of the 1966 obligations assumed from the sole proprietorship. In 1970, by way of an offset, PRH, Inc., made a final settlement on the 1966 obligation to Blue Cross. From this set of facts we can only conclude that PRH, Inc., intended to assume, and did assume, the sole proprietorship's liabilities to Blue Cross as part of the purchase price paid for the sole proprietorship's assets. Payments in settlement of fixed and contingent claims arising from the *151 assumption of liabilities as part of the purchase price of a business do not qualify as ordinary and necessary business expenses under section 162. Holdcroft Transportation Co. v. Commissioner,153 F. 2d 323 (8th Cir. 1946), affg. a Memorandum Opinion of this Court. Consequently petitioner's argument that it is entitled to a corresponding section 162 deduction is denied. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Although Porter Rodgers Hospital was originally operated by a sole proprietorship and later by a corporation, Blue Cross never distinguished between the two forms of operation. In its correspondence and on its books, Blue Cross referred only to Porter Rodgers Hospital. There is no indication in the record when, if ever, PRH, Inc., informed Blue Cross of the change from a sole proprietorship to a corporation.↩
3. Porter Rodgers was a subsidiary in a group of corporations that filed a consolidated return for 1970.Petitioner was the common parent of the group. Hence, petitioner, as well as Porter Rodgers, is liable for the taxes due from that group in 1970. Sec. 1.1502-6(a), Income Tax Regs.↩
4. Sec. 1.451-2(a), Income Tax Regs., provides a general rule for the taxable year of inclusion of constructive receipts: Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time * * *.↩